■ In the Matter of LULA XX., a Person Alleged to be Incapacitated, Appellant. JANE EHRLICH, as Chief Executive Officer of the Columbia-Greene Medical Center, Respondent; MITCHEL OXENHORN, as Commissioner of the Columbia County Department of Social Services, et al., Respondents. [637 NYS2d 234] —Mikoll, J. Appeal from an order of the Supreme Court (Czajka, J.), entered March 23, 1995 in Columbia County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 81, to appoint a guardian for the personal needs of Lula XX.

Respondent, then a 57-year-old woman, was admitted to Columbia-Greene Medical Center (hereinafter petitioner) on August 21, 1994 as the result of respiratory failure where she remained through the hearing and determination of this proceeding. She has a past history of hospital admissions due to respiratory ailments. Respondent is completely dependent on others for her care and needs. She is not ambulatory and is bedfast or chairfast at all times. On December 3, 1994 she weighed 316 pounds. To move from one position to another, respondent requires the assistance of at least two persons. Respondent has had a tracheostomy and is on a ventilator because of her obese condition which, among other numerous physical ailments, renders her breathing muscles dysfunctional and her heart unable to withstand the strain of breathing on its own. Respondent also suffers from hyperlipemia, diabetes, arthritis, hypothyroidism, congestive heart failure, chronic vaginal bleeding and incontinence of bladder and bowel.

Respondent, prior to her hospital admission, received Medicaid assistance and personal care services from the Columbia County Department of Social Services (hereinafter DSS). Additionally, respondent's primary health care provider, Community Health Plan (hereinafter CHP), retained the services of EDDY Visiting Nurse Association to furnish intermittent skilled nursing care to monitor her respiratory condition.

Shortly after respondent's hospital admission, petitioner attempted to form and implement an appropriate discharge plan, but respondent would not agree to placement in a nursing home. CHP refused to provide her home nursing care and personal care services similar to what respondent had been

receiving prior to her hospital admission because of her increased medical needs caused by physical deterioration and a history of noncompliance and noncooperation. DSS refused personal care services at respondent's home due to their inability to make respondent's home situation safe. DSS also refused to accept respondent for its "Long Term Health Program" due to her increased medical needs and the prohibitive cost involved.

Petitioner commenced this proceeding under Mental Hygiene Law article 81 seeking to declare respondent incompetent and for the appointment of a guardian of her person and property. Petitioner alleged that respondent's refusal to accept nursing home placement and her inability to consider alternatives, while continuing to remain in the hospital, indicated respondent's inability to grasp the severity of her medical condition and long-term needs. Following a nonjury trial, held at the hospital because of respondent's medical condition, Supreme Court found that petitioner established by clear and convincing evidence that respondent was incapacitated within the meaning of Mental Hygiene Law article 81 and appointed the Commissioner of DSS to serve as respondent's temporary guardian. In view of respondent's lack of living relatives, Supreme Court appointed, despite his objection, the Commissioner of DSS to serve as her guardian. Respondent appeals from the court's order.

Review of the record reveals that Supreme Court's finding that there was a need to appoint a guardian, pursuant to Mental Hygiene Law article 81, for her personal needs and the management of her property is supported by clear and convincing evidence. However, in view of respondent's deep personal resentment toward DSS and the fact that DSS acted as an adversary to respondent in this proceeding, appointment of the Commissioner presented a conflict of interest (*see,* Mental Hygiene Law § 81.19 [d] [2], [8]). Here, either respondent's counsel or a community guardian program could properly have been appointed respondent's guardian (*see,* Mental Hygiene Law § 81.19 [a] [2]; [e]; Social Services Law § 473-c [2]).

Although a presumption exists that every person has the capacity to manage his or her own affairs, especially regarding the course of his or her medical treatment (*see, Rivers v Katz,* 67 NY2d 485; *Matter of Storar,* 52 NY2d 363, *cert denied* 454 US 858), the presumption may be overcome by evidence that an individual is incapable of managing his or her own affairs (*see,* Mental Hygiene Law § 81.02 [c]). A determination of incapacity, as that term is used in Mental Hygiene Law § 81.02

(a) (2), must be based upon clear and convincing evidence that "(1) the person cannot adequately understand and appreciate the nature and consequences of the person's particular inabilities; and (2) the person is likely to suffer harm because of these limitations and the inability to appreciate the consequences of the limitations" (Law Rev Commn Comments, McKinney's Cons Law of NY, Book 34A, Mental Hygiene Law § 81.02, at 259; *see*, Mental Hygiene Law § 81.02 [b]). In making an assessment of incapacity, the court is required to give "primary consideration" to one's functional limitations (*see*, Mental Hygiene Law § 81.02 [c]).

It is clear from this record that the only realistic option presented is respondent's placement in a nursing home. Respondent is without living relatives and her "significant other", based on his history as attested to by the court evaluator, is not the answer. The evidence clearly indicates that no agency was willing or able to provide adequate home health care services due to respondent's deteriorated condition and her increased medical needs.

Clear and convincing evidence presented to Supreme Court established that respondent is not able to adequately understand and appreciate the nature and consequences of her inabilities. The factual testimony was adequately corroborated by psychiatric testimony and amply demonstrated that respondent suffers from a personality disorder which impacts on her ability to assess her physical and safety needs in handling her illness. There is also clear and convincing evidence that she is likely to suffer harm due to her limitations and inability to appreciate the consequences of them.

Accordingly, the order of Supreme Court is modified by vacating so much thereof as appointed the Commissioner as guardian of respondent, and the matter is remitted to Supreme Court for appointment of another guardian.

Cardona, P. J., Crew III, Casey and Spain, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as appointed the Commissioner of Social Services as guardian for respondent; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.